## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

HAROLD G.,

                    Claimant,

        v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                    Respondent.

No. 19 C 2191

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Harold G.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1382c(a)(3)(C). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant filed a Motion Summary Judgment. [ECF No. 18]. In response, the Commissioner also filed a Motion for Summary Judgment. [ECF No. 27]. Claimant did not file a reply

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

brief. This matter is briefed and ripe for review. For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 18] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 27] is granted.

## PROCEDURAL HISTORY

On May 19, 2015, Claimant filed an application for supplemental security income under Title XVI of the Social Security Act. R.573-78. The claim was denied initially on November 12, 2015, and again on reconsideration on June 15, 2016. R.458-61, 466-71. Claimant requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 8, 2017. R.32-99. After that hearing, ALJ Michael Hellman issued an unfavorable decision denying Claimant's application for supplemental security income on April 2, 2018. R.16-26. The ALJ found that Claimant had severe impairments, including rheumatoid arthritis, bilateral shoulder abnormalities, and bilateral carpal tunnel syndrome but concluded, among other things, that Claimant's impairments did not meet, medically equal, or functionally equal a listing. R. 18, 20-21. The ALJ then determined that Claimant had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 416.967(b) with limitations that "he can lift up to ten pounds occasionally, stand or walk for approximately for [sic] six hours in an eight-hour workday and sit for six hours in an eight-hour workday" and "occasionally reach overhead bilaterally and frequently handle objects bilaterally." R.21. The ALL ultimately determined that Claimant could not perform his past work, but considering Claimant's age, education, work

experience, and RFC, there are jobs in the national economy that Claimant can perform. R.24-25. After receiving the ALJ's unfavorable decision, Claimant filed a request for review on May 10, 2018, which was denied on January 31, 2019, causing the ALJ's decision to become the final decision of the Commissioner, and this Court now has jurisdiction. R.1-9; *see Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994); 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

When a claimant files an application for disability benefits and/or supplemental security income, he bears the burden under the Social Security Act to bring forth evidence that proves his impairments are so severe he cannot engage in any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147-48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits or supplemental security income under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek*, 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## DISCUSSION

In this case, Claimant contends that the ALJ failed to address significant evidence in the record that does not support his conclusion, and therefore, remand is required. Specifically, Claimant argues: (1) the ALJ did not address certain evidence in the record that is contrary to his findings; (2) the ALJ erred in not giving controlling weight to the opinion of his treating physician Dr. Gowhar Khan; (3) the ALJ's assessment of Claimant's subjective complaints is patently wrong; (4) the ALJ failed to address Claimant's need for off-task time in his RFC; and (5) the ALJ's RFC failed to account for the limitations caused by his rheumatoid arthritis. Essentially, Claimant argues that ALJ did not properly consider and weigh the record evidence and medical opinion testimony and that the RFC is not supported by substantial evidence. In response, the Commissioner disagrees with Claimant's arguments and asserts that the ALJ's decision is supported by substantial evidence. The Commissioner argues that Claimant wants the Court to re-weigh the evidence and Dr. Khan's opinion and reach a different conclusion, which the Commissioner points out is not the Court's role. The Court will address the parties' arguments in turn.

At the outset, however, it is important to emphasize that the Court's role in this case is not to determine from scratch whether or not Claimant is disabled and entitled to supplemental security income. Instead, as set forth above, the law mandates that this Court's review of the ALJ's findings is deferential, and the Court only must determine whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial evidence. *See Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). This Court cannot consider the facts anew or draw its own conclusions. Rather, if substantial evidence supports the ALJ's factual findings and analysis, those findings are conclusive, and the Commissioner's decision must be affirmed.[3] 42 U.S.C. § 405(g). In making that determination, the Court must review the record as a whole, and it cannot re-weigh the evidence or substitute its judgment for that of the ALJ. *Id.*

## I.    The Record Evidence Supports the ALJ's Findings

Claimant challenges the ALJ's assessment of the medical evidence and essentially argues that the ALJ failed to build a logical bridge between evidence and his conclusions. For the reasons discussed below, the Court disagrees with Claimant's arguments and finds that the ALJ sufficiently evaluated the record evidence, weighed the opinion evidence, and adequately explained his findings.

---

[3] Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms*, 553 F.3d at 1097 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In his opinion, the ALJ acknowledged Claimant's rheumatoid arthritis, shoulder abnormalities, and carpal-tunnel syndrome, and the ALJ's RFC accommodated Claimant's impairments by limiting him to light work with only: (1) occasional overhead reaching; (2) frequent, rather than constant, handling of objects; and (3) occasional, rather than frequent, lifting of ten pounds. R.18, 21; *see* 20 C.F.R. § 404.1567(b). In making this determination, the ALJ relied on evidence of Claimant's physical abilities in the record and cited the consultative examination performed by Dr. ChukwuEmeka Ezike in September 2015. R.22 (citing R.758-61).

During Dr. Ezike's examination, the ALJ points out that Claimant demonstrated his lower-body functionality, including: (1) exhibiting full strength in his legs and full range of motion in his hips, knees, and ankles; (2) squatting completely; (3) balancing on each foot; (4) easily mounting and dismounting the examination table; (5) heel-toe walking; and (6) walking over fifty feet with a normal gait. R.22 (citing R.758-61). During that examination, Dr. Ezike noted that Claimant had some tenderness and swelling in the wrists, but he demonstrated his upper-body functionality, including (1) normal grip strength; (2) normal ability to grasp and manipulate objects; and (3) ability to extend his hand, make a fist, and oppose his thumb and fingers. R.22 (citing R.758-61). The ALJ further noted that Dr. Ezike's neurological examination revealed no focal deficits (*i.e.*, problems with nerve function). R.22. The ALJ recognized that Dr. Ezike did not provide any function-by-function limitations, but the ALJ noted that Dr. Ezike's objective medical findings demonstrated that Claimant "had greater functional ability than he alleged." R. 22.

The ALJ also noted Claimant's testimony about his ability to shop and attend church services at least weekly. R.23 (citing R.73, 721). The ALJ further discussed some of Claimant's physical therapy notes, which documented: (1) the absence of swelling (edema) in his ankles; (2) only slightly less than full shoulder strength; (3) ability to mow his lawn; and (4) ability to perform a six-minute walk test during which he walked 1,118 feet—well over three football fields—without rest. R.22-23 (citing R.721, 753-54). Together, these records provide "more than a mere scintilla" of evidence to support the ALJ's finding that Claimant was capable of a reduced range of light work. *See Biestek*, 139 S. Ct. at 1154.

Claimant complains that the ALJ did not explicitly discuss Dr. Ezike's observation that his wrists had limited range of motion. Claimant's Brief [ECF No. 19], at 7-8. "The ALJ need not, however, discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Jones*, 623 F.3d at 1162; *see also Rice*, 384 F.3d at 371 ("ALJ need not provide a written evaluation of every piece of evidence"). The ALJ's decision belies the notion that he ignored an entire line of evidence relevant to Claimant's upper-extremity impairments. The ALJ explicitly noted two of Dr. Ezike's observations regarding the Claimant's wrists—mild wrist swelling and tenderness a nerve-conduction study showing mild-to-moderate neuropathy common in cases of carpal-tunnel syndrome. R.22 (citing R.760).

Claimant also relies on ALJ's statement that that no provider noted the fingerless, elastic wrist braces that Claimant wore to the hearing to discredit the

ALJ's conclusion. Claimant's Brief [ECF No. 19 ], at 6-7 (citing R.23). Claimant asserts that the ALJ was mistaken and cites three references to braces or splints in the record. Claimant's Brief [ECF No. 19], at 6-7 (citing R.741, 754, 760). It is not clear that braces that Claimant wore to the hearing are the same braces or splints mentioned in the record nor does Claimant explain why the ALJ's misstatement is fatal. It is well-settled that an ALJ's decision need not be flawless, and minor errors do not require remand. *Berger*, 516 F.3d at 545; *Henke v. Astrue*, 498 F. App'x 636, 641 (7th Cir. 2012). Moreover, later in his decision, the ALJ acknowledged "medical evidence . . . [showing] use of conservative treatment tools, including a brace that allowed him to use his fingers." R.24. And most important, regardless of the ALJ's observation regarding the braces, Claimant does not argue, nor did he submit any evidence, that wearing the braces hindered his ability to use his hands. R.23. In the Court's view, the ALJ's error, if it is error, did not affect his RFC analysis, particularly in light of the ample evidence supporting that analysis discussed above. The Court finds that the ALJ reasonably concluded that the evidence did not establish functional limitations beyond those addressed by the RFC.

The Commissioner argues that in addition to citing to the affirmative evidence of Claimant's abilities, the ALJ also observed that Claimant failed to prove that he had limitations that were not addressed by the RFC. The Court agrees. It is well-settled that the claimant bears the burden of proving his disability. *Eichstadt*, 534 F.3d at 668. A diagnosis does not prove disability, and a claimant must prove that specific functional limitations arise from his impairments. *Weaver v. Berryhill*, 746

F. App'x 574, 578-79 (7th Cir. 2018) (holding that the claimant must prove impairments "imposed particular restrictions on her ability to work"). Given the ALJ's discussion of record evidence enumerating Claimant's physical capabilities, the ALJ reasonably concluded that this evidence did not establish functional limitations beyond those addressed by the RFC. The Court agrees with the Commissioner that Claimant did not meet his evidentiary burden to prove that such limitations existed and finds that the ALJ's analysis is supported by the record evidence.

## II. The ALJ Properly Evaluated the Medical Opinions

An ALJ evaluates medical opinions using several criteria: (1) whether the medical source has examined the claimant; (2) the length and nature of any treatment relationship; (3) how well the source has explained and supported his opinion; (4) the opinion's consistency with the record as a whole; (5) whether the source is opining about his area of specialty; and (6) any other factors, including how familiar the source is with Social Security disability programs and the full record. 20 C.F.R. § 416.927(c). More specifically, for a treating physician's opinion, the ALJ is required to evaluate that opinion in two steps. At the first step, the ALJ must give a treating source's opinion controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2); *see Bates v. Colvin,* 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ decides a treating physician's opinion should not be given controlling weight, then at a second

step, the ALJ must determine what weight to afford the opinion in light of the factors in 20 C.F.R. § 404.1527(c)(2). *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014). These factors include the nature of the examining relationship, the length of the treating relationship, whether the medical evidence supports the opinion, whether the opinion is consistent with the record, the physician's specialization, and any other factors that relate to the opinion. *Schmidt*, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see also Latkowski v. Barnhart,* 93 F. App'x 963, 970-71 (7th Cir. 2004); *Jacoby v. Barnhart*, 93 F. App'x 939, 942 (7th Cir. 2004).

Once contrary evidence is introduced, a treating physician's opinion becomes just one piece of evidence for the ALJ to evaluate. *Ray v. Saul,* 2021 WL 2710377, at *2 (7th Cir. 2021). Although an ALJ must consider all the factors set forth in 20 C.F.R. § 404.1527(c), he need not expressly discuss each factor in his opinion. *Schreiber v. Colvin,* 519 F. App'x 951, 959 (7th Cir. 2013) (rejecting claimant's argument that the ALJ erred by not specifically addressing each factor). As long as the ALJ otherwise explains why the treating physician's opinion is not supported by the medical record and is inconsistent with the rest of the record, that usually will suffice.[4] Ultimately,

---

[4] *Henke,* 498 F. App'x at 640 n. 3 ("The ALJ did not explicitly weigh every factor [in 20 C.F.R. § 404.1527] while discussing her decision to reject [the treating physician's] reports, but she did note the lack of medical evidence supporting [the treating physician's] opinion...and its inconsistency with the rest of the record...This is enough."); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (holding that a "treating physician's opinion is entitled to controlling weight unless it is 'inconsistent with the other substantial evidence'").

the weight accorded to a treating physician's opinion must balance all the circumstances and recognize that while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits…." *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted).

In this case, the ALJ evaluated the opinion of reviewing agency physician Dr. James Greco and the opinion of Claimant's treating physician Dr. Gowhar Khan pursuant to the required criteria. R.23. At the reconsideration level, Dr. Greco found that Claimant's impairments limited him to "light work with the additional manipulative limitations, due to his rheumatoid." R.23, The ALJ gave Dr. Greco's opinion "some weight" and specifically noted that he had reviewed all available medical evidence and was expert in Social Security disability programs and their evidentiary requirements, and the ALJ explained that he gave "some weight" to two components of Dr. Greco's opinions that comported with the record—that Claimant could (1) stand and/or walk for six hours per workday and (2) could handle objects only frequently, rather than constantly. R.23 (citing R.540-41); 20 C.F.R. § 416.927(c)(4). However, based on Claimant's shoulder and carpal-tunnel ailments, the ALJ found Claimant was more limited in lifting, carrying, and reaching than Dr. Greco opined. R.23; 20 C.F.R. § 416.927(c)(4). Even though the ALJ did not give full weight to Dr. Greco's opinion, Dr. Greco's opinion is consistent with the ALJ's RFC that Claimant could perform a reduced range of light work.

Next, the ALJ followed the two-step process prescribed by the regulations to evaluate Dr. Khan's opinion. In April 2015, Dr. Khan opined that Claimant's "pain can be controlled but it limited his ability to perform his previous work," and he was limited "to rarely using his arms, bilaterally, and lifting and carrying less than five pounds, but [Claimant] could not bend, squat, kneel or turn any part of his body." R.23. The ALJ explained that, even though Dr. Khan is a treating source, he was giving "minimal weight" to his opinions because "the opinions assume facts that were not supported by the record" and "are not supported by Dr. Khan's own objective clinical or laboratory findings." R.24.

The Court's inquiry is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527 and built an "accurate and logical bridge" between the evidence and his conclusion. *See Elder,* 529 F.3d at 415-16 (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527). Case law recognizes that it is acceptable for an ALJ to discount a treating physician's opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Knight*, 55 F.3d at 314. The ALJ discussed Dr. Khan's treating relationship with Claimant but ultimately determined that he could not give controlling weight to Dr. Khan's opinion because it was overwhelmingly based on Claimant's subjective reports and not fully consistent with other medical evidence in the record, Claimant's activities of daily living, and Claimant's limited longitudinal course of treatment. R.21-24. In the ALJ's view, Dr. Khan's opinion assumed facts

that were not part of the record and was not supported by Dr. Khan's own objective clinical and laboratory findings. R.24.

For example, Dr. Khan opined that Claimant could not lift five pounds, "rarely" use his hands or arms, never squat or climb stairs, and neither sit nor stand for five minutes. R.23-24 (citing R.713-16, 782-91). The ALJ, however, found that Dr. Khan's opinions conflicted with other objective evidence in the record, which documented Claimant's (1) normal leg and arm strength; (2) normal grip strength; (3) intact abilities to grasp and manipulate objects, extend his hand, make a fist, and oppose his thumb and fingers; (4) normal range of motion in his knees and ankles; (5) ability to balance on either foot; (6) ability to squat; and (7) ability to walk over fifty feet with a normal gait. The ALJ also noted Claimant's own testimony contradicted Dr. Khan's assertion that he could not lift five pounds. Compare R.24 with R.83 (Claimant testified he could carry a five-pound object for four minutes); R.759 (Claimant "state[d] that he can . . . lift 10 pounds"). Because Dr. Khan's opinions were inconsistent and, in some cases, contradicted by other record evidence, the ALJ reasonably did not give Dr. Khan's opinion controlling weight and sufficiently explained why. *See Burmester*, 920 F.3d at 512 (ALJ properly discounted treating-source opinion contradicted other medical evidence).

Ultimately, the ALJ concluded that "the medical opinions are not persuasive in limiting the claimant further than the residual functional capacity" he had found. R.23. As discussed above, the Seventh Circuit has cautioned that the claimant bears the burden to prove he is disabled by producing medical evidence to support his claims

14

of disability. In the Court's view, Claimant did not meet his burden in this case when his disability claim rises and falls almost entirely on Dr. Khan's opinion because that opinion is based largely on Claimant's subjective reports and is inconsistent with other record evidence. Claimant did little to support that opinion with other evidence, and so the ALJ's decision cannot be re-weighed by this Court.

At the end of the day, even if the ALJ could have reached a decision in Claimant's favor on the record before him, which is what Claimant contends he could and should have done, the ALJ's failure to do so is not reversible error as long as the decision the ALJ actually made is supported by substantial evidence in the record and the Court can follow the ALJ's rationale in concluding that Claimant is not disabled. *See Brenda L. v. Saul*, 392 F. Supp. 3d 858, 862 (N.D. Ill. Aug. 8, 2008) ("If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance.") (citing 42 U.S.C. § 405(g)); *Zoch v. Saul*, 981 F.3d 597 601 (7th Cir. 2020) (asking "whether the ALJ's decision is supported by substantial evidence – evidence that 'a reasonable mind might accept as adequate to support a conclusion'") (quoting *Biestek*, 139 S. Ct. at 1154). The Court agrees with the Commissioner that the ALJ's decision in this case passes muster under the applicable legal standards. That decision may not be perfect, but it need not be. *See Buchholtz v. Barnhart,* 98 F. App'x 540, 544 (7th Cir. 2004).

The issue presented is not whether this Court would have reached the same result as the ALJ did, but whether the ALJ was justified in reaching the decision he

reached on the record before him. Claimant essentially asks the Court to second-guess the ALJ's assessment of Dr. Khan's opinion and decision not to give it controlling weight. That, however, is not the Court's role in this case. *See Simila v. Astrue,* 573 F.3d 503, 513 (7th Cir. 2009) (a reviewing court should not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations"). Ultimately, it is for the ALJ to weigh the evidence and to make judgments about which evidence is most persuasive. *See Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989). The Court finds that the ALJ weighed the evidence as he was required to do and adequately explained his reasoning in a thorough decision. At the end of the day, the ALJ concluded that, during the relevant time period, even though Claimant was not able to do is past work, he was able to do light work with certain limitations.

The ALJ's decision is supported by substantial evidence in the record and the Court can follow the ALJ's rationale. Because the ALJ examined the relevant evidence and reached a conclusion reasonably supported by that evidence, the Court has no grounds to disturb his analysis of the record evidence and the weight to be given to the medical opinions based on the facts of this case.

### III.   The ALJ Considered Claimant's Subjective Complaints

Claimant argues that the ALJ's subjective symptom statements analysis was flawed, and that remand is required. Claimant's Brief [ECF No. 19] at 10-13. The Court disagrees with Claimant and, for the reasons discussed below, finds that the

ALJ was not patently wrong in his assessment of Claimant's subjective symptom statements.

An ALJ's evaluation of a claimant's subjective symptom statements will be upheld unless it is "patently wrong." *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin,* 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). An ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).

In this case the ALJ concluded Claimant's subjective statements about the intensity, persistence and limiting effects of his symptoms are "inconsistent with the objective evidence in the case record" and those inconsistencies "render [Claimant's] allegations less persuasive." R. 24. The ALJ discussed Claimant's complaints that he (1) suffers disabling pain in his arms and legs, (2) is unable to stand for long periods due to swelling in his legs and ankles, (3) is unable to sit for long periods because of knee pain, and (4) needs a cane for walking long distances. R.21-22 (citing R.53, 81-82, 615). The ALJ, however, identified substantial evidence inconsistent with these complaints. As discussed above, the ALJ was particularly persuaded by Dr. Ezike's numerous normal findings during Claimant's consultative examination. R.22. The

ALJ also observed that the record did not support Claimant's claim that he needs a cane to walk long distances. R.22. Among other evidence, the ALJ cited (1) Claimant's attendance at physical therapy sessions without a cane; (2) his ability to walk over fifty feet, unassisted, with a normal gait; and (3) his ability to perform a six-minute walk test, during which he walked well over three football fields without rest. R.22 (citing R.721, 753-54, 758-61). The ALJ also noted that Claimant mowed his lawn, shopped, and regularly attended church. R.23 (citing R.73, 721).

The ALJ noted that Claimant complained about his hands and shoulders and a limited ability to use his fingers and upper extremities but explained that the objective medical evidence "failed to provide sufficient support for his allegations." R. 24. Specifically, the ALJ noted that aside from his left shoulder (rotator cuff) surgery (R.22, 680), Claimant's alleged limitations are not well-documented in the record evidence, and his conservative treatment with medication, injections, and physical therapy is inconsistent with his claims of disabling pain. R.22. The ALJ also concluded that Claimant thwarted his own progress and belied his claims of disabling pain by missing numerous physical therapy sessions. R.22-24. In addition to highlighting evidence that contradicted Claimant's claims, the ALJ again noted that it is Claimant's burden to support his claims with medical evidence. R.24.

The Court is not persuaded by Claimant's argument that the ALJ's analysis of his subjective symptom statements is flawed. Claimant again points to the ALJ's statement that his medical providers did not mention his wrist braces, speculating that it might have influenced the ALJ's view of his reliability. Claimant's Brief [ECF

No. 19], at 6-7. But as discussed above, even if the ALJ's comment was mistaken, "[n]ot all of the ALJ's reasons [for a subjective-symptom evaluation] must be valid as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009); *Simila*, 573 F.3d at 517 (holding that an ALJ's analysis of a claimant's allegations does not need to be flawless). The ALJ gave other sound reasons for his determination that Claimant had overstated his limitations. Claimant thinks that the ALJ should have found his statements more reliable in light of supporting evidence Claimant references, but the ALJ considered that evidence and found it was outweighed or contradicted by other evidence in the record.

The law requires a reviewing court to "defer[] to the presiding ALJ, who has seen the hearing up close," and there is no presumption of truthfulness for a claimant's subjective complaints. *Biestek*, 139 S. Ct. at 1157. An ALJ is entitled to rely on the objective observations made during a consultative examination as one factor in evaluating the veracity of a claimant's statements. *Rice,* 384 F.3d at 371. Indeed, the ALJ in this case emphasized that his analysis of Claimant's subjective symptom statements was heavily based on his review of the objective medical evidence, which he ultimately concluded did not corroborate Claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."). As the Seventh Circuit has recognized, "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue,* 623 F.3d 1155, 1161 (7th Cir. 2010); *see also Britt v.*

19

*Berryhill,* 889 F.3d 422, 426 (7th Cir. 2018); *Getch v. Astrue,* 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart,* 409 F.3d 798, 804 (7th Cir.2005); *Mueller v. Astrue,* 860 F. Supp. 2d 615, 633 (N.D. Ill. 2012). This Court finds that the ALJ sufficiently explained his evaluation of Claimant's subjective symptom claims and provided a logical bridge between the evidence and his conclusions. Therefore, the ALJ's determination must stand.

### IV.    The ALJ's RFC Is Supported by Substantial Evidence

Claimant's remaining arguments challenge the ALJ's RFC findings. Specifically, Claimant argues that the ALJ failed to address Claimant's need for off-task time in his RFC and did little to account for the limitations caused by his rheumatoid arthritis. Claimant's Brief [ECF No. 19], at 11-14. Claimant's arguments are not persuasive.

Relying on the Seventh Circuit's opinion in *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. 2019), which has been superseded and amended, Claimant argues that the ALJ needed to discuss the vocational expert's testimony that a hypothetical worker could be off task no more than fifteen percent of the day. Claimant's Brief [ECF No. 19], at 11-12. Claimant, however, cites the very language that the Seventh Circuit altered when it amended that decision. Claimant's Brief [ECF No. 19], at 11-12; compare *Winsted*, 915 F.3d. at 471-72 (cited by Claimant) with *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). The Seventh Circuit's amended opinion clarifies the operative rule: if an ALJ finds that a claimant has a certain functional limitation, he must include that limitation in a hypothetical question for a vocational expert and

incorporate the vocational expert's response into his decision. *Winsted*, 923 F.3d at 477. In this case, however, the ALJ did not find that Claimant had an off-task limitation, and therefore, the ALJ was not required to discuss the vocational expert's testimony regarding such a limitation. This conclusion dovetails with the well-established rule that an ALJ must incorporate into an RFC only those "limitations that he accepts as credible." *Simila*, 573 F.3d at 521 (quoting *Schmidt*, 496 F.3d at 846).

Claimant's remaining argument simply repeats his contention that he is disabled by his rheumatoid arthritis and the ALJ's RFC is not supported by substantial evidence. In the Court's view as explained above, the ALJ adequately explained his findings and provided sound reasons for his determination that the Claimant had overstated his limitations. The ALJ considered Claimant's complaints and found the objective medical evidence more persuasive. Claimant is not happy with that assessment and wants this Court to reweigh the evidence and reach a different conclusion, but that is not the Court's role. *See Burmester*, 920 F.3d at 510 (reviewing court cannot reweigh evidence, resolve evidentiary conflicts, decide questions of credibility, or substitute its judgment for the ALJ's).

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 18] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 27] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 21, 2021